REDACTED / CLEARED FOR PUBLIC RELEASE

~~Treat as Classified~~ ████████ ~~Contents Subject to CIPA Protective Order~~

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 10-225 (CKK) |
| | ) | |
| v. | ) | |
| | ) | Filed with the Classified |
| STEPHEN JIN-WOO KIM, | ) | Information Security Officer |
| | ) | CISO |
| Defendant. | ) | Date |

### DEFENDANT STEPHEN KIM'S FIFTH MOTION TO COMPEL DISCOVERY

Defendant Stephen Kim, by and through undersigned counsel, hereby moves this

Honorable Court for an order directing the government to disclose the following discovery items.

This motion is made pursuant to Rule 16 of the Federal Rules of Criminal Procedure as well as

Mr. Kim's right to exculpatory information as set forth in *Brady* and its progeny. *See Brady v.*

*Maryland*, 373 U.S. 83 (1963).

## I.  Introduction and Relevant Facts

The status of discovery in this case is already well known to the Court. On February 11,

2013, the defendant filed four motions to compel the production of classified and unclassified

material. On May 30, 2013, after full briefing by the parties, the Court issued opinions

addressing each of the defendant's motions. The Court ordered the government to produce

certain materials, denied many of the defendant's other requests, and invited the defense to

submit narrower discovery requests on certain topics. The Court also resolved several *ex parte*

motions filed by the government under CIPA § 4 to remove, withhold, or substitute classified

information during discovery. The *ex parte* CIPA § 4 motions appear to have addressed some of

the same topics raised in defendant's motions to compel discovery. *See* Sealed Order of June 4,

~~Treat as Classified~~ ████████ ~~Contents Subject to CIPA Protective Order~~

1

REDACTED / CLEARED FOR PUBLIC RELEASE

2013 (addressing appropriate "cut-off time" and ordering production of FBI-302 regarding

████████████████████████ North Korea).

Pursuant to the Court's order, on June 14, 2013, the defense provided the government

with supplemental requests for discovery based on the Court's opinions. *See* Exhibit 1. The

parties met and conferred on June 18th, and the government responded to the defense's requests

by letter on July 2, 2013. *See* Exhibit 2. In its letter, the government stated that it was still

"working with the Intelligence Community to formulate a potential response" to two of the

requests. For three requests, the government demanded that the defendant "provide a proffer of

what the defendant knew bearing on these requests." For the four remaining requests, the

government responded by stating either that "all discoverable material bearing on this request"

had already been produced, that "to its knowledge" no such documents exist, or that the request

"calls for the production of classified material to which the defense is not entitled." The

government has not produced a single page of additional classified or unclassified discovery in

response to these requests.[1]

In light of the government's unwillingness to produce any additional discovery, the

defense now moves to compel the production of the items described below. Given the Court's

recent opinions, the defense has attempted to frame its requests as narrowly as possible. The

defense notes, however, that there remains a significant information asymmetry in this case.

Unlike a typical case, the defense does not have access to Mr. Kim's work files, emails,

---

[1] Since the June 4th status hearing, the government has provided only 35 pages of additional
discovery, most of which are heavily redacted. These pages were produced in response to the
Court's orders on defendant's motions to compel discovery and the government's *ex parte* CIPA
§ 4 motions. The government cross-references some of these pages in response to the defense's
most recent requests, but has not produced a single page of classified or unclassified discovery in
response to these requests.

~~Treat as Classified~~ ██████████ ~~Contents Subject to CIPA Protective Order~~

computers, or work product from the time period in question, which was over four years ago.[2] With respect to what the defendant knew or had reason to know at the time of the alleged disclosure, for example, the defense still has not been granted access to Mr. Kim's email, access logs, or computer files from the relevant time period.

Given these limitations, the defense requests that, in the event the Court finds that an otherwise-appropriate request has been framed too broadly, the Court either afford the defense an opportunity to narrow the request or order the production of the subset of materials that the Court finds discoverable. Similarly, if the Court finds that a request would be appropriate if the defense could make a more specific factual showing, the defense requests that the Court order the government to produce the materials necessary to make such a showing (assuming, of course, that the defense does not already have those materials).

## II.    Legal Standard

The legal standards applicable to defendant's motion to compel discovery are addressed in detail in defendant's prior motions. *See* First Motion at 4-6. The defense incorporates that earlier discussion by reference. The defense notes, in particular, that under *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998), documents are discoverable under Rule 16 if they

---

[2] In denying part of defendant's third motion to compel discovery, the Court relied on the fact that the government has produced a substantial amount of material related to Mr. Kim's work at the State Department, including screenshots from his computer. *See* Opinion on Third Motion at 19. The government did not make such an assertion, nor could it. The screenshots referred to by the Court are from several months *after* the alleged disclosure, and thus do not shed much light on defendant's work during the relevant time period. *Id.* The "briefings and narrative reports" produced by the government and referenced by the Court consisted primarily of work product dating back to Mr. Kim's work before he joined the State Department in June 2008. The defense has not been granted access to Mr. Kim's classified computers or work files from the relevant time period, nor has the government produced the other intelligence reports accessed by Mr. Kim in the weeks leading up to the alleged disclosure. If the defense were to attempt to reconstruct Mr. Kim's work activities during June 2009, it would be unable to do so based on the documents produced by the government to date.

~~Treat as Classified~~ ██████████ ~~Contents Subject to CIPA Protective Order~~

help the defense ascertain the strengths and weaknesses of the government's case or aid the

defense's efforts to conduct an investigation to discredit the government's evidence. *Id.*

### III.    Specific Items Requested

#### A.    Motive Evidence

The defendant's third motion to compel discovery sought the production of intelligence

reports accessed by Mr. Kim during the time period of the charged leak, in order to rebut the

government's theory that Mr. Kim leaked information to Fox News to curry favor with that

organization. *See* Third Motion at 14-15.  In its opinion, the Court noted that its "analysis of this

request is somewhat more difficult in light of the Government's silence on the issue of whether it

intends to offer evidence of the Defendant's motive." Opinion at 18.  The Court thus ordered the

government to notify the defense "[i]f the Government intends to offer evidence of the

Defendant's motive at trial ... so as to allow the Defendant sufficient time to seek discovery at

least helpful to the defense in rebutting the Government's evidence of motive." *Id.*

On June 12, 2013, the government notified the defense that it may rely on not just one but

three potential theories of motive at trial: (1) that Mr. Kim was "a disgruntled government

employee because he believed that his insights regarding North Korea were being ignored or

rejected by other government personnel"; (2) that Mr. Kim "believed that the intelligence

information from the ███████ report on June 11, 2009, confirmed the accuracy of his view

that North Korea ██████████████████████████"; and (3) that Mr. Kim "wanted

to resign from his government position and find a new job, including at Fox News as a specialist

in Korean and East Asian affairs and national security issues." *See* Exhibit 3.  The government

acknowledged that the third theory above "might fall within the criteria outlined by the Court in

its Memorandum Opinion" but stated that the defendant's need for any additional intelligence

reports "could be resolved by stipulation or summary rather than production of the reports themselves." *Id.*

Based on the government's motive theories, the defense requested four types of information in its June 14th letter:

1. "Any classified intelligence report accessed by Mr. Kim between May 1, 2009, and June 11, 2009." *See* Ex. 1, Item 5(a).

2. "Any classified intelligence report accessed by Mr. Kim between June 1, 2008, and June 11, 2009, regarding North Korea's ███████████████████████." *See* Ex. 1, Item 5(b).

3. "Any documents regarding Mr. Kim's alleged 'view that North Korea ██████ ██████.'" *See* Ex. 1, Item 5(c).

4. "Any documents or other evidence tending to support or refute the government's claim that Mr. Kim was 'a disgruntled government employee' and/or that 'his insights regarding North Korea were being ignored or rejected by other government personnel.'" *See* Ex. 1, Item 5(d).

In its response, the government denies or delays responding to the defense's request. The defense therefore moves to compel the production of the items discussed below.

### 1. Other Classified Intelligence Reports Accessed by Mr. Kim

The defense's request for intelligence reports accessed by Mr. Kim between May 1, 2009, and June 11, 2009, was based on the government's confirmation that, as one theory of motive, it intends to introduce evidence that Mr. Kim wanted to resign from his position to seek employment at Fox News. *See* Exhibit 3. As the Court acknowledged in addressing defendant's third motion to compel discovery, the defense has the right to rebut this theory with evidence that Mr. Kim had access to intelligence that would better satisfy his alleged goal of currying favor with Fox News.[3] *See* Opinion on Third Motion at 18. The defense's request seeks access to

---

[3] The defense notes that there is no reason why such reports would be limited to a particular country or topic area, such as North Korea. If Mr. Kim's purported motive was to curry favor

such information within a narrowly-defined timeframe: from May 1, 2009 (the date that Mr. Kim allegedly met Mr. Rosen) to June 11, 2009 (the date of the alleged disclosure).

In its response, the government states that it is "working with the Intelligence Community to formulate a potential response to this request." *See* Ex. 2, Item 5(a). The government's July 2nd letter did not suggest when a response would be forthcoming, and as of the date of this motion no response has been provided. It is thus not clear when the government intends to respond (or how the government will respond, in light of the word "potential"). To avoid further delays in the CIPA process, the defense respectfully asks the Court to set a deadline for the government to respond to this request. The original deadline for the government's response was July 2nd.

While the Court may wish to withhold its opinion until the government responds, the defense notes that the government has not yet agreed to produce *any* additional intelligence reports, and its motive letter alludes to resolving the issue "by stipulation or summary." *See* Ex. 3. It is difficult to imagine how defense counsel could agree to stipulations or summaries regarding intelligence reports that they have never seen, nor would stipulations or summaries be sufficient. As the Court acknowledged in its prior opinion, the purpose of the defense's request was to demonstrate that, if Mr. Kim sought to curry favor with Fox News, several other intelligence reports would have served this goal far better than the one at issue in this case. Summaries or stipulations of other intelligence reports will not adequately serve the defense's purpose of contrasting these other reports with ████ at issue.

The government has also expressed concerns about the potential number of reports responsive to the defense's request. While the defense acknowledges these concerns, the

with Fox News, sensitive information about any number of topics would have achieved that goal far better than ████ at issue in this case.

government has never actually stated how many intelligence reports are at issue. The number of reports would be a good first step; otherwise the parties and the Court are simply left to speculate. Moreover, to address the government's concerns, the defense has offered to review a list of the titles of the intelligence reports accessed by Mr. Kim during the requested time period. The defense could then attempt to narrow the list by identifying those reports that best satisfy the discovery request, *i.e.*, those reports that would have better served the alleged goal of currying favor with Fox News.[4] The government has not yet responded to this offer, nor has it proposed any other method to identify and produce the requested reports.[5] The defense's request is grounded in the government's own description of its motive theory. If the government wants to rely on such a theory, it must produce the discovery that would rebut such a theory at trial. *See* Opinion on Third Motion at 18.

### 2. Defendant's Views on North Korea's ██████████████

The government's motive letter also alleges that Mr. Kim disclosed ████████ because he believed that it "confirmed the accuracy of his view that North Korea ████████████████ ████████████." *See* Ex. 3. To prepare a defense to the government's new theory, the defense requested documents regarding Mr. Kim's alleged view "that North Korea ██████ ████████████," as well as any intelligence reports regarding North Korea's ████████████████ accessed by Mr. Kim between June 2008 (when he started working

---

[4] The effectiveness of this approach would obviously depend on the descriptiveness of the titles, as well as any other information the government provides about the reports (*e.g.*, topic, content, etc.).

[5] Unlike a normal case, the defense does not have access to the defendant's work files, emails, or computers from the relevant time period. The defense has requested access to all reports accessed by Mr. Kim, but those requests have been denied. The defense has therefore been deprived of the ability to determine, on its own, which reports would best serve the alleged goal of currying favor with Fox News, as the defense has no way of knowing which reports were accessed during the relevant time period.

at VCI) and June 11, 2009 (the date of the alleged disclosure). *See* Ex. 1, Items 5(b) & 5(c). The government denied these requests, stating that they "call for the production of classified material to which the defense is not entitled." *See* Ex. 2 at 4.

### a.   Documents Regarding Defendant's Alleged View

The basis for the defense's request for documents regarding Mr. Kim's alleged view that North Korea ████████████████ is obvious. The government alleges that Mr. Kim held such a view, and that it served as a motive to disclose the material at issue in this case. Any documents supporting or refuting the government's assertion that Mr. Kim held such a view are thus relevant and helpful to the preparation of Mr. Kim's defense, as they go directly to the evidentiary basis for the alleged motive. *See United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) (holding evidence discoverable under Rule 16 if it allows the defense to ascertain the strengths and weaknesses of the government's case or helps to prepare a strategy to confront evidence at trial); *United States v. Mejia*, 448 F.3d 436, 456-57 (D.C. Cir. 2006) (explaining that evidence can be "relevant and helpful" without being "favorable" in the *Brady* sense). Indeed, any documents refuting the government's assertion that Mr. Kim held such a view must be produced under *Brady*, as such documents could be used to impeach the government's evidence at trial. *Mejia*, 448 F.3d at 456.

The government prefaces its response by implying that it has already produced some material "bearing on" this request. *See* Ex. 2 at 4 ("Other than the documents already produced to the defense bearing on these requests, we believe ....."). The government does not identify these documents, and its response is confusing in light of its subsequent assertion that the request calls for the production of "classified material to which the defense is not entitled." *Id.* To the extent that the government is arguing that it has already produced those documents responsive to

this request, however, the defense notes that *Brady* includes not only a duty to disclose

exculpatory information, but also a duty to search for such information. *See United States v.*

*Brooks*, 966 F.2d 1500, 1502 (D.C. Cir. 1992); *United States v. Safavian*, 233 F.R.D. 12, 15

(D.D.C. 2005). If the government intends to argue at trial that Mr. Kim leaked the contents of

████████ because it "confirmed the accuracy of his view that North Korea ████████████

████████████████████," *see* Ex. 3, then it must search for and produce any information

in its possession, custody, or control tending to show either that Mr. Kim did not hold such a

view, or that he did not believe that ████████ confirmed his view of North Korea's ████████

████████████. If the government has not searched for such information, it has not

fulfilled its obligations under *Brady*.

b.    <strong>Intelligence Reports Regarding North Korea's</strong> ████████

The defense's request for intelligence reports regarding North Korea's ████████

████████████ ████████████ that were accessed by Mr. Kim during his employment at

VCI also flows directly from the government's new motive theory about his "view." The reports

sought by the defense are "relevant and helpful" to the preparation of the defense for at least two

reasons.

First, the government's motive theory is not plausible unless ████████ was the first report

allegedly "confirming" Mr. Kim's view that North Korea ████████████████████████. If

there were other, earlier reports accessed by Mr. Kim indicating the same thing, there would be

no reason for Mr. Kim to disclose ████████ (as opposed to the earlier reports) in order to validate

his alleged view about North Korea's ████████. For the jury to determine whether the statements

contained in ████████ regarding North Korea's ████████████████████ were so noteworthy

as to motivate Mr. Kim to violate the law, the defense must be provided with any other

intelligence reports accessed by Mr. Kim regarding North Korea's ████████████████.
The significance of the statements in ████████████████ cannot be evaluated
in a vacuum; the defense must be permitted to test that theory by reviewing the other reporting
on the topic accessed by Mr. Kim during the same time period.[6]

Second, the requested reports regarding North Korea's ████████████████ are
also necessary to determine whether █████ could be viewed as "confirming" the view that
North Korea ████████████, ████████████████
████████████████████████. To assess
whether Mr. Kim viewed the ████████████████ as sufficient
to "confirm" his alleged view, the defense (and ultimately the jury) must examine other reporting
from the same time period accessed by Mr. Kim addressing whether North Korea ████████
███████. As the defense argued in its earlier motions to compel, █████ itself is
far from authoritative; ████████████████████████
████████████████████████ If the government
intends to argue that Mr. Kim viewed █████ as significant "confirmation" of his alleged view
that North Korea ████████████████, the defense must be able to test that theory
by reviewing other reporting on the state of North Korea's ████████████ during
the same time period.

---

[6] The dates provided in the defense's request reflect the dates of Mr. Kim's employment at the
State Department. The government has not indicated how many intelligence reports are
responsive to this request. The defense therefore has no means of determining how many
intelligence reports regarding North Korea's ████████████ were accessed by Mr.
Kim while he was the State Department. If the request generates a large number of responsive
reports, the parties could revisit the time frame specified by the defense.

### 3.    Disgruntled Employee Theory

The government's motive letter also claims that Mr. Kim disclosed the contents of ██

██ because he was a "disgruntled employee" who "believed that his insights regarding North

Korea were being ignored or rejected by other government personnel." *See* Ex. 3.  In response,

the defense requested "any documents or other evidence tending to support or refute the

government's claim that Mr. Kim was 'a disgruntled employee' and/or that 'his insights

regarding North Korea were being ignored or rejected by other government personnel.'" *See* Ex.

1, Item 5(d).  The government denied this request, stating that it "call[s] for the production of

classified material to which the defense is not entitled." *See* Ex. 2 at 4.

Much like the defense's request for documents regarding the defendant's purported views

on ████████████, the basis for this request is straight-forward.  The government alleges

that Mr. Kim was disgruntled and that he believed his insights were being ignored or rejected.

The defense has asked for any documents that tend to prove or disprove this claim.  Any

documents supporting or refuting these assertions are relevant and helpful to the preparation of

the defense, as they go directly to his alleged motive. *See Marshall*, 132 F.3d at 67; *Mejia*, 448

F.3d at 456-57.  Any documents refuting the government's assertions must be produced under

*Brady*, as such documents could be used to impeach the government's evidence at trial. *Mejia*,

448 F.3d at 456.

The government's motive letter is vague; if the defendant was allegedly disgruntled,

which of his views were being ignored or rejected, and why would these things purportedly

motivate him to leak the contents of ████████  In its response, the government does not provide

any additional information regarding its motive theory, nor does it explain what it means when it

claims that some documents "bearing on" this request have already been produced.[7] *See* Ex. 2 at

4. At the meet-and-confer, the defense nonetheless provided examples of documents that will be

responsive and discoverable, based on the government's motive theory.[8] The government has

yet to provide any substantive explanation for its refusal to produce any documents responsive to

this request.

In summary, the Court's prior opinion states that if the government is arguing motive, the

defense is entitled to discovery to rebut the government's claims. The government intends to

argue motive, and the defense made requests specific to the government's motive theories. The

government still refuses to provide any additional discovery. An order compelling discovery is

therefore warranted.

**B.      Substituted** ███████

In its fourth motion to compel discovery, the defense sought ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████. *See* Fourth Motion at 7-11. In its opinion, the Court

agreed that ███████ *may* be helpful, and thus *Yunis* may require that certain ███████ be

disclosed to a defendant." Opinion on Fourth Motion at 8-9. The Court denied the motion,

however, because "[t]he Defendant simply has not even attempted to make a showing that the

███████████████████████████████████████████████████

---

[7] With respect to this claim, the defense again notes that *Brady* encompasses not only a duty to disclose exculpatory information, but also a duty to search for such information. *See* Section A-2(a) above.

[8] The defense noted, for example, that any emails from supervisors or colleagues acknowledging the usefulness of defendant's views or accepting his recommendations would be discoverable, as they tend to rebut the government's assertion that defendant believed his views were being ignored or rejected.

████ would be at least helpful to the defense as *Yunis* requires." *Id.* at 9.  In the Court's

view, the fact that ████████████████████████████████████████

████ was not sufficient to render ████████████ relevant and helpful to the preparation of

the defense.[9]  *Id.* at 10.

In light of the Court's ruling, the defense requested additional information regarding

████████████████████████████████████████ to allow the defense to

make the showing required by the Court.  *See* Ex. 1, Item 6.  The defense requested ten

categories of information, which the government responded to individually.  *See* Ex. 2 at 5.

These categories of information are addressed below.

1.    "To Our Knowledge"

Sub-part (a) of the defense's request seeks FBI 302s and underlying notes from

interviews ████████████████████.  *See* Ex. 1, Item 6.  In its response, the

government stated that, "to [its] knowledge," the material requested by the defense had already

been produced.  *See* Ex. 2 at 5.  The government made the same statement with respect to sub-

parts (d) and (j), regarding ████████████████████████████████

████████ respectively.  *Id.*

Although these requests appear to be resolved, the government's unusual "to its

knowledge" disclaimer should give the Court pause.  As noted above, the government is under

an obligation to both search for and disclose any exculpatory information within its possession,

custody, or control.  The "to our knowledge" disclaimer does not change that.  This is

───────────────────────

[9] The defense notes that these are ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

particularly important with respect to subpart (j), as ████████████████

████████████████████████████████

the Rosen article" could be exculpatory.  The defense assumes, based upon the government's

representations, that the government has searched for any such ████████████ and found none

(other than those ██████████, if any, that were already produced).  The defense asks the

Court to require the government to confirm this and, if it is not the case (*i.e.*, if the government's

disclaimer was intended to signal something other than full disclosure after a thorough search),

require the government to conduct such a search.

    2.    ████████████████

    Subparts (b) and (c) of the defense's request seek ████████████████ from June 10-

11, 2009, ████████████████████████████████.

Such ████ were requested to allow the defense to determine ████████████████

████████████ during the relevant time period, and whether ████████████████

████████████████.

    The government failed to directly respond to these requests in its letter, instead answering

requests that the defense did not make.  With respect to ████████████, the government states that

it has "searched available ████████████████████████████

████████████████████████ and found none.  Ex. 2 at 5.  The government

does not explain what it means by "available" ████████████, nor does it produce the requested

████████████████████████████████

████  Similarly, with respect to ████████████, the government states that it has "searched

available ████████████████████████████████

████████ and found none. *Id.*  Again, the government does not explain what it means

by "available" ████ nor does it produce the requested ████

     The defense's requests were not limited to █████████████████

████ as such a request would be far too narrow.  The government's response assumes –

without justification – that the information contained in ██████ was disclosed directly to Mr.

Rosen via ███████████ presently known to investigators (rather than

indirectly through colleagues or other sources, whether intentionally or not).  The defense's

actual request for ██████████████ was intended to allow the defense to review ████

██████████████████████████████████████████████████

████████████████████ In the absence of any direct

response from the government, the defense thus moves to compel the production of ████

██████████ from June 10-11, 2009, for ████████████████████

█████████ prior to publication of the Rosen article.[10]

   **3.**    **Additional Information**

     With respect to sub-parts (e), (h), and (i) of the request (regarding ██████████

██████████████████████████), the government states that it

is still "working with the Intelligence Community to formulate a potential response." *See* Ex. 2

at 5.  These sub-parts thus remain outstanding, and the defense respectfully requests that the

Court set a deadline for the government's response.[11]

---

[10] If such records reflect ██████████████████ first accessed
the intelligence, the government can do what it has done throughout this case and redact those
██████████

[11] In addition to information regarding ██████████ on June 10-11, 2009 (sub-part (e)),
the defense also requested ██████████ The defense reserves this request pending the government's

The defense also notes that all of its requests for information regarding ██████████

████████████████████ are intended to allow the defense to make the factual

showing discussed in the opinion regarding the relevance and helpfulness of ████████

██████████████ to the preparation of the defense. The defense anticipates making such a

showing by separate motion, once it has had an opportunity to review the government's

forthcoming response and any additional discovery ordered by the Court.

### C.    Information Known to the Defendant at the Time of the Alleged Disclosure

The defendant's third motion to compel discovery sought additional information

regarding the nature of the information at issue in this case and defendant's knowledge at the

time of the alleged disclosure. In its opinion on defendant's third motion, the Court held that

certain information requested by the defense may be discoverable if it was known by the

defendant at the time of the alleged disclosure. *See* Opinion on Third Motion at 15, 17, 19.

Based on the Court's rulings, the defense asked the government to produce the following:

1. Any damage assessment or other document assessing the effects of the alleged leak based on information known to the defendant at the time of the alleged disclosure. *See* Ex. 1, Item 2.

2. Any documents addressing ███████████████████████████ or the intelligence community's "confidence level" in that reporting based on information known to the defendant at the time of the alleged disclosure. *See* Ex. 1, Item 3.

3. Any classified intelligence report regarding North Korea ████████████ accessed by Mr. Kim between May 1, 2009, and June 11, 2009. *See* Ex. 1, Item 4(a).

4. Any classified intelligence report ██████████████████████ ████████ as the charged intelligence report that was accessed by Mr. Kim between June 1, 2008, and June 11, 2009. *See* Ex. 1, Item 4(b).

---

response to the request for ███████████████. Depending upon its specificity, the
government's response to sub-part (e) may obviate the need for ████████████

During the meet-and-confer process and then again by letter, the government responded by demanding a proffer "of what the defendant knew bearing on the requests." *See* Ex. 2 at 4.

Following the last status hearing, the parties met and conferred at the direction of the Court regarding the "proffer" issue and the defense's requests. The defense provided some additional information as to the classified systems utilized by the defendant to perform his job functions, but reiterated its view that a proffer is neither necessary nor appropriate in light of the fact that the government is in the best position to determine – four years after the events at issue – which reports were accessed by Mr. Kim in the weeks leading up to the alleged disclosure.

Discussions between the parties in an effort to resolve this impasse continue. Items 2, 3, and 4 from the defense's June 14th discovery letter therefore remain outstanding and are not yet ready for the Court's review.[12] Per the Court's direction, the parties will notify the Court if a sealed hearing on this issue is necessary.

### D. Other Investigations

In its opinion on defendant's second motion to compel discovery, the Court indicated that it "may entertain narrower requests from the Defendant" regarding other leaks of intelligence ████████████████████ and other investigations of certain National Security Council and State Department employees for the unauthorized disclosure of national defense information. *See* Opinion on Second Motion at 5-6, 7, 12-14. On that basis, the defense requested additional information regarding five specific types of investigations described in the defense's June 14th letter. *See* Ex. 1, Item 1.

---

[12] The defense notes that these requests also remain subject to defendant's pending motion for reconsideration. If the Court were to agree with the defense and adopt the approach employed by the Fourth Circuit and *Abu-Jihaad*, information regarding whether the intelligence at issue was potentially damaging or reliable would be discoverable.

~~Treat as Classified~~ ███████████████ ~~Contents Subject to CIPA Protective Order~~

In its response, the government indicated that it had not identified any additional information responsive to the defense's requests, although it chose to apply the definition of "formal investigation" previously employed by the parties during the meet-and-confer process and in the defense's earlier motions. *See* Ex. 2 at 3-4 & n.1. The defense had not utilized that definition in its June 14th letter, due to concerns that the definition previously agreed to by the parties was too narrow and was unwarranted given the limited number of individuals at issue. Based on representations from the government, the defense had previously assumed that leak investigations are handled by the Department of Justice. But a recently declassified report indicates that the Office of the Inspector General of the Intelligence Community handles large numbers of "leaks investigations," and is currently reviewing 375 "unauthorized disclosure case files." *See* Ex. 4 (Semi-Annual Report of the Office of the Inspector General of the Intelligence Community).

The defense submits that additional discussion between the parties is warranted here, given the declassified OIG report. In the event that an issue remains outstanding, the defense will seek leave to raise the matter with the Court.

### E.    Outstanding Items Addressed in the Court's Prior Rulings

In its June 14th letter, the defense also requested additional information regarding several items addressed in the Court's prior rulings on defendant's motions to compel. During both the meet-and-confer process and in the parties' exchange of letters, the government has been unwilling to clarify its responses to the following requests, necessitating assistance from the Court.

~~Treat as Classified~~ ███████████████ ~~Contents Subject to CIPA Protective Order~~

## 1.    Additional Intelligence Reports

The Court's rulings on defendant's first motion to compel relied on a representation by the government that it searched for intelligence reports addressing ██████████████████ ████████████████. *See* Ex. 1, Item 7. Based on prior discussions, the defense understood that the government had searched only for intelligence reports addressing ██████ ████████████. *Id.* To avoid any confusion, the defense again requested any intelligence reports created between May 25, 2009, and June 11, 2009, addressing ████████ ██████████████████ *Id.*

In its response, the government stated only that it "has produced to the defense all discoverable material bearing on this request." Ex. 2 at 6. The defense has asked the government to clarify what it meant by all "discoverable" material, and specifically whether that included reports addressing ████████████████████ (as the Court was led to believe) or only those reports addressing ███████ (as the government consistently maintained during the discovery process). The government refused to clarify its response. The defense thus moves to compel the production of the requested intelligence reports, for the reasons provided in its original motion.

## 2.    Report from ██████████████

In defendant's first motion to compel, the defense sought information regarding a report from ██████████████ described by Daniel Russel in his interview with the FBI.    In its opinion denying this request, the Court stated that "[t]he defendant has received the information referred to by Mr. Russel during his interview." Opinion at 14. In its June 14th letter, the defense advised the government that it had not received the report described by Mr.

Russel. The defense thus asked the government either to identify the report by Bates number or to produce the report, if it had not already been produced. *Id.*

In its response, the government referred the defense to CLASS_3204, an █████████████ ████████████████████ *See* Ex. 2 at 6; Ex. 5 (████████ Email). This response is puzzling, for two reasons.

First, the government did not produce CLASS_3204 until July 2, 2013, more than a month *after* the Court decided defendant's motions.[13] The ████████ email therefore was not something that the defense had already received at the time the Court decided defendant's motions, as the Court had apparently been led to believe. *See* Opinion at 14.

Second, the government's representation that the ████████████████████ ████████████████████████ referred to in the Russel 302 is difficult to square with the 302 itself. The same paragraph of the 302 refers to both "information from████ ████████████████████████████ *See* Ex. 6 (Russel FBI-302). It would be unusual for the 302 to refer to the same document in two different ways in a single paragraph. The defense, of course, has no way of resolving this inconsistency because the relevant sections of both the Russel 302 and the newly-produced████ email have been heavily redacted. The defense therefore moves to compel the production of the "information from████████████████████ referred to in the Daniel Russel FBI-302. If the government maintains that the requested information is, in fact, the████ email, the defense moves for an unredacted copy or, at a minimum, requests that the Court review unredacted copies of both documents to confirm that they are in fact ████████

---

[13] In fact, the Court ordered the government to produce the████ email in its opinion on defendant's first motion to compel discovery. *See* Opinion on First Motion at 12. The government opposed defendant's request for the email, so it most certainly was not a document that the defense had already received at the time of the Court's ruling.

~~Treat as Classified~~ ████████████████████████   ~~Contents Subject to CIPA Protective Order~~

██████ *i.e.*, that ██████████████ referred to by Mr. Russel matches ███████████

████████████████ email).

    Additionally, the defense notes that the ██████████ referred to by the government

was produced in response to the Court's rulings on defendant's first motion to compel discovery.

*See* Opinion on First Motion at 12. While the Court permitted the government to redact certain

information from the email, *see id.*, the version provided to the defense lacks any classification

markings whatsoever. *See* Ex. 5. There is no indication that the email was sent over a classified

system, which goes directly to whether the information contained in the email was closely held.

There are also no classification or portion markings that might explain why the email was

produced as part of classified discovery, or whether the document contains classified information

that the defense would have to notice under CIPA § 5.[14] With respect to the ████████ email,

the defense therefore moves to compel the production of information regarding whether the

email was sent over a classified system, whether the email was classified when it was sent, and

whether the email presently contains classified information that would have to be noticed under

CIPA § 5.

    3.    ████████████

    In its June 14th letter, the defense also requested ██████████ related to ██████ that

was drafted or circulated prior to the 3:16 p.m. cut-off time adopted by the Court in its ex parte

order. *See* Ex. 1, Item 9. The defense noted in particular that, according to the 302 from his

interview with the FBI, ████████████ provided the government with a "longer" version of ███

██████████ that was circulated at 2:41 p.m. on June 11, 2009. *See* Ex. 7 at 2 ██████████).

Despite multiple requests, the government had refused to produce the 2:41 p.m. ██████████

---

[14] Based on the document provided to the defense, it is not even clear why the government
should be permitted to redact anything from the email, as it does not appear to be classified.

~~Treat as Classified~~ ████████████████████   ~~Contents Subject to CIPA Protective Order~~

The government responded by directing the defense to CLASS_3205 to CLASS_3218, a series of emails and attachments produced by the government on July 2, 2013, pursuant to the Court's Orders. *See* Ex. 2 at 6. The government did not specify which of the documents in this range was ██████ identified by ██████ During the most recent meet-and-confer session, the defense asked the government to clarify which of the documents produced by the government was ████████████████ as several of the pages in the range cited by the government are emails that are clearly not ██████ The government refused to identify ██████ requested by the defense. The defense thus moves, once again, to compel the production ██████ derived from, referencing, or discussing the contents of ████ that was drafted or circulated prior to 3:16 p.m. on June 11, 2009. If the government has already produced the requested ██████ the defense requests that it be ordered to identify those ████ by Bates number.

In addition, the defense notes that the discovery provided by the government in response to the Court's *ex parte* order is heavily redacted. *See* Ex. 8 (CLASS_3205 to 3218). For example, CLASS_3205-06 is an email apparently responding to a request for comments on ██ ██████ *Id.* The entire email is redacted. CLASS_3208 appears to be part of ██████ that the government had previously refused to disclose. *Id.* The title of the document and its lone un-redacted sentence demonstrate that the document concerns ██████ ██████ -- a topic lying at the heart of one of the government's new theories of motive, as described above. But the rest of the document is redacted.

At the most recent meet-and-confer, the defense asked the government whether the redactions contained in these documents – which were produced by Order of the Court – had been reviewed and approved by the Court. The government refused to provide a direct answer.

~~Treat as Classified~~█████████████        ~~Contents Subject to CIPA Protective Order~~

As noted above, these documents appear to discuss ██████████████████ topics lying at the heart of the defense's theory of the case and the government's new motive theory. The defense therefore moves to compel the production of unredacted copies of CLASS_3205 to 3218.

WHEREFORE, for the reasons set forth above and any others appearing to the Court, the defendant seeks an Order compelling the government to produce the materials requested by the defense in its letter of June 14, 2013, and described herein. The defendant further asks the Court to set deadlines for the government to provide a response to those requests that remain outstanding, and to order the government to produce unredacted copies of the materials related to ██████████ that were produced to the defense on July 2, 2013.

Respectfully submitted,

DATED:  July 23, 2013

/s/ Abbe David Lowell
Abbe David Lowell  (DC Bar No. 358651)
Keith M. Rosen  (DC Bar No. 495943)
Scott W. Coyle  (DC Bar No. 1005985)
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave NW
Washington, DC  20036

*Counsel for Defendant Stephen Kim*