**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.: 10-225 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| **STEPHEN JIN-WOO KIM,** | ) | |
|    also known as Stephen Jin Kim, | ) | |
|    also known as Stephen Kim, | ) | |
|    also known as Leo Grace, | ) | |
| | ) | |
|          **Defendant.** | ) | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

As a then-senior intelligence advisor and analyst, defendant Stephen Jin-Woo Kim knew the harm that disclosure of classified information could cause to our national security. Nevertheless, he disclosed to a reporter TOP SECRET intelligence information concerning the military capabilities and preparedness of a country with a long history of hostility towards the United States, North Korea. As the defendant admitted when he pled guilty, he was not acting as a whistleblower – his unauthorized disclosure to the reporter was not motivated by a desire to expose any government misconduct. Nor was it an accident or a mistake. Rather, the defendant acted with knowledge that his disclosure was both unauthorized and unlawful. In so doing, he betrayed the trust of his country and placed our Nation's security at risk.

The defendant has now accepted responsibility for his very serious crime and is prepared to serve a prison sentence. The United States and the defendant agree that the appropriate sentence for the defendant's crime is 13 months of incarceration and a year of supervised release. The United States respectfully requests that the Court accept the parties' agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and sentence the defendant accordingly.

I.  **DEFENDANT'S CRIMINAL CONDUCT**

There is no dispute about the facts underlying the defendant's charge, which are the subject of a Statement of Offense filed on February 7, 2014. The following facts are summarized from that pleading.

A.  **Professional Background**

To place the defendant's conduct in context, it is important to appreciate his professional background. At the time of the offense, the defendant was a sophisticated consumer of intelligence. In June 2009, the defendant was working as a Senior Advisor for Intelligence to the Assistant Secretary of State for the State Department's Bureau of Verification, Compliance, and Implementation ("VCI"). VCI was responsible for ensuring that appropriate verification requirements were fully considered and properly integrated into U.S. arms control, nonproliferation, and disarmament agreements and for monitoring other countries' compliance with such agreements. As a result of his official responsibilities, the defendant held a TOP SECRET security clearance and had regular access to classified and national defense information relating to the activities of numerous members of the United States Intelligence Community.

The defendant was also well-trained in the proper handling of classified intelligence and knew the damage that unauthorized disclosures could cause to our national security. Prior to June 2009, the defendant entered into various nondisclosure agreements with the United States, obligating him not to disclose classified information to any unauthorized person and advising him that any such unauthorized disclosure could constitute a violation of United States criminal laws, including Title 18, United States Code, Section 793. The defendant entered into such nondisclosure agreements both prior to and during his work at the Department of State. The scope of these nondisclosure agreements encompassed the TOP SECRET information that the

defendant has accepted responsibility for disclosing. As this Court has previously observed, under the applicable Executive Order, TOP SECRET information is information "'the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to national security.'" United States v. Kim, 808 F. Supp. 2d 44, 53 (D.D.C. 2011) (quoting Exec. Order No. 12958 § 1.2, as amended by Exec. Order No. 13292, 3 C.F.R. § 196 (2004)). The defendant admitted during the plea hearing that he knew that the information he disclosed was properly classified TOP SECRET and that its unauthorized disclosure could be used to the injury of the United States or to the advantage of a foreign nation, i.e., North Korea.

### B. Defendant's Unauthorized Disclosure of National Defense Information

The defendant's unauthorized disclosure of TOP SECRET national defense information was not an accident or a mistake. By June 2009, he had already struck up a relationship with a national news reporter for Fox News ("the reporter"). Beginning no later than in or about early May 2009, the defendant and the reporter began to communicate via telephone, e-mail, and in person on a number of subjects, including North Korea. Both the defendant and the reporter (who was then assigned to cover the Department of State) had offices in the headquarters building of the Department of State.

On June 11, 2009, the defendant willfully disclosed to the reporter national defense information derived from a TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION[1] ("TOP SECRET//SCI") level intelligence report (referred to hereinafter as the

---

[1] Sensitive compartmented information (or SCI) is a type of classified information concerning or derived from sensitive intelligence sources, methods, or analytical processes. SCI must be handled within formal access control systems established by the Director of National Intelligence. One must receive explicit permission to access an SCI control system or compartment. Once it is determined a person should have access to an SCI compartment, that person signs a nondisclosure agreement specific to that compartment. The defendant signed a

3

"Intelligence Report") concerning the military capabilities and preparedness of North Korea. The TOP SECRET//SCI information he disclosed was both very timely and unique. It was disseminated to the Intelligence Community in a singular Intelligence Report at 9:50 a.m., and just hours after, its contents would be revealed on the Internet by Fox News as a result of the defendant's criminal conduct.

The United States had made substantial efforts to protect the Intelligence Report's contents from disclosure. It was disseminated on a classified database, access to which was restricted to authorized users who possessed a TOP SECRET security clearance, authorized access to the classified SCI compartment at issue, and authorized access to the classified database itself. As of June 11, 2009, the defendant was entrusted with such lawful access, permitting him to access and read the Intelligence Report on the classified database. As the defendant knew, the reporter did not have lawful access to the contents of the Intelligence Report. Nor was the defendant ever authorized, directly or indirectly, by the United States to deliver, communicate, or transmit any national defense information to the reporter or any other member of the media.

On June 11, 2009, the defendant and the reporter contacted each other by telephone, both using their Department of State desk phones. Beginning at approximately 11:27 a.m., the defendant accessed and read the Intelligence Report on the classified database, using his Department of State computer in his office. At approximately 11:37 a.m., the defendant called the reporter's Department of State desk phone. This call lasted approximately 20 seconds. Immediately thereafter, the defendant called the reporter's cell phone. This second call lasted approximately 1 minute and 8 seconds.

---

nondisclosure agreement specific to the compartment at issue on February 27, 2009, less than four months prior to the unauthorized disclosure at issue.

Less than a half hour later, the defendant and the reporter met outside of the headquarters building of the Department of State. Badge records demonstrate that they exited the building at nearly the same time, were absent from the building for approximately 25 minutes, and then re-entered the building very close in time.

In his interactions with the reporter on June 11, 2009, the defendant orally disclosed TOP SECRET//SCI national defense information from the Intelligence Report, specifically about the military capabilities and preparedness of North Korea. In so doing, the defendant acted knowingly and willfully and not by accident or mistake. Further, in disclosing national defense information to a reporter, the defendant was not acting as any kind of whistleblower. The defendant did not believe he was exposing any government waste, fraud, abuse, or any other kind of government malfeasance or misfeasance.

Within a few hours after the defendant and the reporter re-entered the headquarters building of the Department of State very close in time at approximately 12:30 p.m., Fox News published an article on the Internet that included the TOP SECRET//SCI national defense information from the Intelligence Report that the defendant had disclosed to the reporter, that is, TOP SECRET//SCI national defense information specifically about the military capabilities and preparedness of North Korea (the "June 11th article"), thereby disclosing to North Korea at that moment what our Nation's Intelligence Community knew or did not know about its military capabilities and preparedness in question.

### C.  Defendant's Statements to the FBI

The Federal Bureau of Investigation (FBI) interviewed the defendant on September 24, 2009, and again on March 29, 2010. In his FBI interview on September 24, 2009, the defendant falsely stated that he had not had any contact with the reporter since meeting him in March 2009.

In his FBI interview on March 29, 2010, the defendant acknowledged that the information from the Intelligence Report that appeared in the June 11th article was national defense information and properly classified at the TOP SECRET//SCI level. The defendant further acknowledged that the unauthorized disclosure and publication of that information could be used to the injury of the United States or the advantage of a foreign nation.

## II. UNITED STATES SENTENCING GUIDELINES CALCULATION

Although the parties have reached agreement, pursuant to Rule 11(c)(1)(C), for a fixed term of imprisonment, the United States concurs in the United States Sentencing Guidelines ("USSG") calculation found in the Presentence Investigation Report ("PSR"). PSR at ¶¶ 28-38. The parties agree that the guideline for the Section 793(d) offense is found in USSG § 2M3.2 because the defendant pled guilty to the oral disclosure of national defense information (i.e., intangible information) with reason to believe it could be used to the injury of the United States or the advantage of a foreign nation. See USSG § 2M3.3 (Application Note 2); Statement of Offense at ¶¶ 8, 11-12; see also PSR at ¶ 29. As the information he disclosed was classified at the TOP SECRET level, the base offense level pursuant to USSG § 2M3.2 is 35.

The parties disagree as to the application of the two-level adjustment for an Abuse of a Position of Trust under USSG § 3B1.3, which, if applied, would result in a total offense level of 37. While the United States submits that application of the two-level adjustment is justified here because the defendant plainly abused his position of trust as an intelligence professional who had a TOP SECRET security clearance and had signed multiple nondisclosure agreements,[2]

---

[2] Section 3B1.3 of the sentencing guidelines provides that a two-level enhancement is warranted where the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. Here, the defendant's TOP SECRET security clearance and his execution of multiple nondisclosure agreements manifested the special trust and professional discretion placed in him by the United

increasing the defendant's base offense level by two levels would have no material impact on his guideline calculation. Even without application of the two-level adjustment, the defendant's resulting base offense level (i.e., a level 32 following a three-level adjustment for acceptance of responsibility) would produce an advisory guidelines range that would exceed the 10-year statutory maximum sentence imposed by 18 U.S.C. § 793 (i.e., 121-151 months). See USSG § 5G1.1(a) (where the statutory maximum sentence is less than the minimum of the applicable guidelines range, the statutorily authorized maximum sentence shall be the guideline sentence); PSR at ¶ 84. Accordingly, regardless of the applicability of USSG § 3B1.3, the defendant's

---

States. See Kim, 808 F. Supp. 2d at 57 ("By virtue of his security clearance, Defendant was entrusted with access to classified national security information and had a duty not to disclose that information."). As the Senior Advisor for Intelligence to the Assistant Secretary of State, the defendant had broad access to some of the Nation's most closely guarded secrets, including the Intelligence Report. Further, his position of trust significantly facilitated his ability to commit the unauthorized disclosure at issue, and gave him freedom to commit the difficult-to-detect wrong. Indeed, but for his security clearance and access to the classified database, the defendant would not have been in a position to commit the crime. See United States v. Shyllon, 10 F.3d 1, 5 (D.C. Cir. 1993) (applying the position of trust enhancement to a District of Columbia tax auditor convicted of extortion because he abused the public trust). Cf. United States v. Tann, 532 F.3d 868, 875-76 (D.C. Cir. 2008) (clerical or ministerial employees who do not exercise managerial or professional discretion do not fall within USSG § 3B1.3). Also unavailing is the defendant's assertion that the two-level adjustment is inappropriate because it is already incorporated into the base offense level under USSG § 2M3.2. Section 2M3.2 makes no mention of an abuse of trust as being included in its base offense level, and that guideline has no specific offense characteristics. Further, USSG § 2M3.2 encompasses both violations of 18 U.S.C. § 793(d), which criminalizes the disclosure of national defense information by individuals having lawful access to that information by virtue of their security clearance, and violations of 18 U.S.C. § 793(e), which criminalizes disclosures of national defense information by individuals having unauthorized access to that information which would include individuals who were not in a position of trust vis-à-vis the United States, i.e., individuals without a security clearance. See USSG § 2M3.2 (Commentary; Statutory Provisions); 18 U.S.C. § 793(e). Thus, because USSG § 2M3.2 is applicable to violations by individuals who occupy positions of trust, and those who do not, it necessarily does not incorporate an enhancement for an abuse of a position of trust. See Shyllon,10 F.3d at 5-6.

guideline sentence would be 120 months.  See id.³  Thus, the parties dispute over the applicability of USSG § 3B1.3 is irrelevant and need not be resolved by the Court prior to sentencing.  See Fed. R. Cr. P. 32(i)(3)(B) (court need not resolve "unnecessary" disputes concerning the presentence report that will not affect sentencing).

### III.   APPLICABLE LAW

Section 3553, Title 18, provides that, in determining a particular sentence, the Court should consider the nature and circumstances of the offense and characteristics of the defendant.  18 U.S.C. § 3553(a)(1).  In addition, it states that the Court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(A) & (B).  Further, the sentence should protect the public from further crimes of the defendant and provide the defendant with needed correctional treatment.  18 U.S.C. § 3553(a)(2)(C) & (D).  Finally, the sentence should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

### IV.   THIS COURT SHOULD ACCEPT THE PARTIES' AGREEMENT AND SENTENCE THE DEFENDANT ACCORDINGLY

As the Court is aware, the parties have reached an agreement as to the appropriate sentence in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  Specifically, the parties have agreed that the defendant should be sentenced to 13 months of imprisonment and one year of supervised release.  The agreement reflects a fair resolution of the defendant's

---

³ Nor would the two-level difference to the offense level following the adjustment for acceptance of responsibility have any impact on the defendant's guideline fine range.  See USSG § 5E1.2(c)(3) (fine range of $17,500 - $175,000 applicable to offense levels 32 through 34).

criminal culpability especially when balanced against the further harm to the national security that would likely result from a trial.

As an initial matter, a term of incarceration for the defendant is plainly appropriate. Having worked as an intelligence professional for nearly seven years, the defendant knew that his unauthorized disclosure of classified information to the reporter was unlawful. By the time of his illegal disclosure, the defendant was a Senior Advisor for Intelligence to the Assistant Secretary of State, had held a security clearance since October 2002, and had signed multiple nondisclosure agreements acknowledging that the unauthorized disclosure of classified information could cause irreparable injury to the United States or be used to the advantage of a foreign nation. Despite these warnings, he chose to disclose to the reporter TOP SECRET//SCI intelligence concerning the military capabilities and preparedness of North Korea, a country hostile to the United States. When the defendant was finally confronted by the FBI concerning his relationship with the reporter, the defendant falsely denied it. In so doing, the defendant intentionally betrayed the trust that had been bestowed in him by the United States and placed our Nation's security at risk.

Further, the defendant specifically disavowed to this Court under oath at the plea hearing, that he acted by accident or mistake, and agreed instead that he acted willfully, that is, that he knew that his conduct was a violation of U.S. criminal laws. Transcript of Feb. 7, 2014, Plea Hearing at 37-38. Moreover, he affirmed to the Court that he understood that the information he disclosed was national defense information properly classified at the TOP SECRET//SCI level and that he had reason to believe that its unauthorized disclosure and publication could be used

to the injury of the United States or the advantage of foreign nation.[4]  Finally, he admitted that his criminal conduct was not motivated by a desire to expose any government misconduct, i.e., he was not acting as a whistleblower.[5]

The parties' sentencing agreement provides a just resolution to this case.  Although the recommended sentence is below guidelines and provides the defendant with a lesser term of imprisonment than likely would be imposed after trial and conviction, under the agreement the defendant will be held accountable for his crime not only by admitting his guilt to the lead charge in the indictment, but by standing convicted of a serious federal felony that will preclude him from ever accessing our country's secrets again.  The defendant will also be required to serve a term of incarceration that will deter others who are entrusted with our Nation's sensitive national security information and would consider compromising it.  Accordingly, the sentence will promote respect for the law and afford adequate deterrence to similar criminal conduct in the future.

The negotiated sentencing agreement also confers significant benefits on the United States.  First, it avoids the expense, time, and risk associated with a jury trial and appeal, as well as additional lengthy pre-trial proceedings under the Classified Information Procedures Act.  As this Court is aware, the issues presented by trying a case that has classified information at its core

---

[4] Similarly, in March 2010, the defendant admitted to the FBI that the national defense information at issue was properly classified at the TOP SECRET//SCI level and that its disclosure by the reporter in the June 11th article was "egregious" and "bad."  Thus, by the defendant's own account, the national defense information that he disclosed to the reporter was not "overclassified."

[5] In contrast to the government's burden to prove that the defendant acted with the requisite intent, the United States has no obligation to prove what motivated the defendant when he made the unauthorized disclosure to the reporter.  Moreover, the law recognizes that individuals can act with mixed motives.  Whatever the defendant might say today about why he acted the way that he did in June 2009, the defendant's contemporaneous emails and pre-arrest statements to the FBI point to his ego and desire for professional advancement as his real motives.

are complex; and their final resolution, whether by this Court or on appeal, is uniquely difficult to predict. See Kim, 808 F. Supp. 2d at 55 (observing that there has been a "dearth of prosecutions" under Section 793(d) "most likely" because of the "difficulty in establishing such a violation, combined with the sensitive nature of classified information and the procedures that must be followed in using such information in trial"). An adverse determination concerning the handling of classified information at trial – whether by the trial court or on appeal – can severely hamper, if not end, a Section 793(d) prosecution, as has occurred in other cases involving unauthorized disclosures to the media.

Most importantly, the United States must balance the need for prosecution with the damage that further disclosure of classified information at trial might cause.[6] Over eight months ago, the prosecution advised the Court and the defense that proving the government's case at trial would require the United States to declassify a substantial amount of TOP SECRET//SCI information. While the United States would have done so had the defendant not agreed to plead guilty, the plea agreement affords the United States a substantial benefit in protecting from disclosure that still-classified information. The undersigned have consulted with the FBI and members of the Intelligence Community affected by the defendant's unauthorized disclosure, and they have concurred in this judgment. Because it appropriately satisfies the need for both

---

[6] Because this balance is different in each case involving the unauthorized disclosure of national defense information to the media, the United States submits that making comparisons between other Section 793(d) cases and this one is of limited value. Indeed, as this Court has observed, there have been very few such prosecutions in federal courts. Kim, 808 F. Supp. 2d at 55. Each presented a different tension between the prosecutorial and intelligence interests at stake. Further, since United States v. Morison, those that have led to conviction have been resolved by guilty pleas with many of the facts underlying those pleas still classified. Thus, making comparisons between those cases and this one based on publicly available information is of little utility.

punishment and deterrence in light of the nature and seriousness of the offense, the Court should accept the parties' sentencing agreement and sentence the defendant accordingly.

## V.   CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court accept the parties' sentencing agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and sentence the defendant accordingly.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. Bar Number 447-889

By:
/s/
G. MICHAEL HARVEY
Assistant United States Attorney
D.C. Bar Number 447-465
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530
Phone: (202) 252-7810
Michael.Harvey2@usdoj.gov


/s/
JONATHAN M. MALIS
Assistant United States Attorney
D.C. Bar Number 454-548
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530
Phone: (202) 252-7806
Jonathan.M.Malis@usdoj.gov


/s/
THOMAS A. BEDNAR
Assistant United States Attorney
D.C. Bar Number 493-640
United States Attorney's Office

555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-7877
Thomas.Bednar@usdoj.gov

_____/ s/_____
DEBORAH A. CURTIS
U.S. Department of Justice Trial Attorney
CA Bar Number 172208
600 E Street, N.W.
Washington, D.C. 20530
Phone: (202) 233-2113
Deborah.Curtis@usdoj.gov

_____/ s/_____
JULIE A. EDELSTEIN
U.S. Department of Justice Trial Attorney
D.C. Bar Number 976-558
600 E Street, N.W.
Washington, D.C. 20530
Phone: (202) 233-2260
Julie.Edelstein@usdoj.gov

## CERTIFICATE OF SERVICE

On this 24th day of March, 2014, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

_____/s/_____
G. MICHAEL HARVEY
Assistant United States Attorney